IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JODIE DELGADO**,

        Plaintiff,

v.	Hon.
        Case No. 13-1

**LIFE INSURANCE COMPANY
OF NORTH AMERICA**,
a Pennsylvania corporation,

        Defendant.
_____/

## COMPLAINT

Plaintiff, JODIE DELGADO, through her attorneys, ILANA S. WILENKIN and FELDHEIM & WILENKIN, P.C., complains against the above-named Defendant as follows:

**I.	Jurisdiction and Venue**

1)	This Court's jurisdiction exists under the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically, 29 U.S.C. §§ 1132(e)(1) and 1132(f), which provisions grant this Court the jurisdiction to hear civil actions to recover benefits due under the terms of an employee welfare benefit plan.

2)	The subject welfare benefit plan consists of a short and long-term disability insurance plans as well as life insurance coverage with a waiver of premium, which, upon information and belief, are sponsored by DISH Network, LLC ("DISH") and underwritten and administered by Defendant Life Insurance Company of North America ("LINA") for the benefit of DISH employees.

3)    29 U.S.C. § 1133 provides a mechanism for the administrative or internal appeal of benefit denials.  Plaintiff ("Mrs. Delgado") has either exhausted all of her appeals or has been denied access to a meaningful and/or full and fair pre-suit appellate review.  This matter is ripe for juridical review.

4)    Mrs. Delgado further maintains that this matter is ripe for juridical review as to available long-term disability benefits.  Based on LINA's rationale for denying Mrs. Delgado's remaining short-term disability benefits it would be futile to submit an application for long-term disability benefits because the same evidence LINA refused to credit would be relied upon to support Mrs. Delgado's LTD claim. (Ex. 1).

5)    Pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391, venue is proper in the Eastern District of Michigan.

## II.    Nature of Action

6)    This is a claim seeking disability income benefits pursuant to the DISH Network, LLC Disability/Employee Welfare Benefit Plan ("the Plan"), which, upon information and belief, is sponsored by DISH and underwritten and administered by LINA, and which Plan was intended to provide short and long-term disability income benefits as well as life insurance with waiver of premium to DISH employees, including Mrs. Delgado.  This action is brought pursuant to § 502(a)(1)(B) of ERISA - 29 U.S.C. § 1132(a)(1)(B).

## III.    The Parties

7)    Mrs. Delgado is 37 years-of-age and is a resident of Pontiac, Michigan.

8) LINA is a Pennsylvania corporation, with its resident agent being The Corporation Company, 30600 Telegraph Rd., Ste. 2345, Bingham Farms, MI 48025.

9) During all relevant times, the Plan constituted an "employee welfare benefit plan," as defined by 29 U.S.C. § 1002(1), and, incidental to her employment, Mrs. Delgado received coverage under the Plan as a "participant," as defined by 29 U.S.C. § 1002(7). This claim relates to benefits due under the above-described Plan.

### IV.   Factual Statement/Medical History

10) Mrs. Delgado began working for DISH on or about April 27, 2011 as a store manager, which occupation is physically classified as being medium duty.

11) Mrs. Delgado became a covered employee under the Plan on or about July 1, 2011.

12) Upon information and belief, the short-term disability portion of the Plan defines disability to mean:

> [I]f, solely because of Injury or Sickness, she is:
>
> 1. unable to perform the material duties of her Regular Occupation; and
>
> 2. unable to earn 80% or more of her Covered Earnings from working in her Regular Occupation.

13) Upon information and belief, the long-term disability portion of the Plan likely defines disability similarly to the preceding STD definition.

14) Mrs. Delgado stopped working on March 29, 2012 due to fibromyalgia-caused chronic pain and functional impairments. She has not engaged in any substantial gainful activity since that date.

15) A review of the record demonstrates that Mrs. Delgado's treating neurologist, Nadia Zaki, M.D., has consistently opined that Mrs. Delgado is disabled due to fibromyalgia and its resulting sequelae.

16) Shortly after Mrs. Delgado's last day of work, she submitted a disability application to LINA/the Plan.

17) LINA approved and paid the benefits beginning approximately April 7, 2012 through May 24, 2012, at which time LINA denied the claim.

18) Mrs. Delgado repeatedly appealed LINA's decision(s), which denial it ultimately upheld on May 15, 2013 by offering the following rationale:

> Disability is determined by medically supported functional limitations/restrictions which preclude ability in performing your occupation. The outcome of the review determined that the medical records contained on file do not provide supportive documentation of significant physical functional deficits or significant cognitive deficits that would preclude your client's ability to perform her occupational duties as a Store Manager beyond May 24, 2012.
>
> Based on medical information provided, there is a lack of clinical evidence to support a decrease in functional status of severity to preclude your client's ability to function beyond May 24, 2012. This is evidence by lack of correlation with the clinical findings such as significant decreased measured range of motion and decrease measured muscle strength. The office notes from neurology indicate normal exam findings. The physical therapy notes provide treatment and exercises perform. There were no physical therapy notes provided for the month of May. The information contained in your client's claim file consists of self reported complaints of poor functioning with no sustained or significant physical exam findings that will support a severe functional limitation which would preclude your client from perform her occupational duties beyond May 24, 2012.
>
> We do not dispute that your client may have been somewhat limited or restricted due to her subsequent medical conditions and treatment; however, we have not been provided clinically supportive medical

4

> evidence to document a severity of impairment or deficits in your client's functional ability to preclude her from performing her occupation.
>
> Please note that pathology alone does not necessarily equate to a presence of a disabling condition or decreased level of functionality. In light of this fact, we must reconfirm our decision to deny disability benefits. At this time your client's claim is closed and no further benefits are payable. (Ex. 1).

19) Given LINA's detailed reasoning supporting its short-term disability denials, in which it repeatedly determined that Mrs. Delgado was not disabled from performing *her regular occupation*, it is not reasonable for her to have believed that, in response to a LTD claim application, LINA would have suddenly taken the opposite position and approved LTD benefits effective approximately July 13, 2012 by finding that she was disabled from performing *her regular occupation*. See *Dozier v. Sun Life Assur. Co. of Can.*, 466 F.3d 532 (6th Cir. 2006) which held that plaintiff was not required to appeal Sun Life's waiver of premium denial after it had denied her LTD claim:

> In the end, we are left with two policies whose consistent interpretation would have required Sun Life to deny Dozier's application for the waiver-of-premium benefit, two policies that so far as the record shows have never been construed inconsistently and an individual applicant whose only sin was in assuming that the company would treat his administrative appeals in a consistent and coherent manner. The futility rule permitted him to act on that assumption, and accordingly the district court must process his claim. *Dozier*, 466 F.3d at 537.

20) LINA's actions have now foreclosed all avenues of administrative appeal pertaining to short and long-term disability benefits and this matter is ripe for judicial review.

21) Because valid, objective, and well-supported proofs establish that Mrs. Delgado has met and satisfied the Plan's definition of disability under the short and

long-term policies, she is entitled to the immediate payment of disability benefits retroactive to approximately May 25, 2012.

**WHEREFORE**, based upon the preceding reasons, Plaintiff prays for the following relief:

A) That this Court enter judgment in Mrs. Delgado's favor against LINA and order the immediate payment of her disability income and other employee benefits, including group life insurance policy, retroactive to the date that benefits were denied.

B) That this Court order LINA to pay Mrs. Delgado post-judgment interest on all benefits that have accrued as of the date of judgment in accordance with M.C.L. § 600.6013 and 600.6455.

C) That this Court award attorneys' fees pursuant to 29 U.S.C. § 1132(g).

D) That Mrs. Delgado recovers all relief to which she may be entitled, along with the costs of litigation.

Respectfully submitted:

**FELDHEIM & WILENKIN, P.C.**

By:  s/Ilana S. Wilenkin
Ilana S. Wilenkin (P61710)
Plaintiff's Attorney
30300 Northwestern Highway, Suite 108
Farmington Hills, MI 48334-3255
(248) 932-3505; Fax (248) 932-1734
ilana@lawsmf.com

Date:  September 17, 2013